IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>D'QUINTA ARASTOO HILL<br>a/k/a "Kunta,"<br><br>*Defendant.* | Case No. 1:25-MJ-327<br><br>**UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANTS

I, Vanessa Drew, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.      This Affidavit is submitted in support of a Criminal Complaint and arrest warrants for **D'QUINTA ARASTOO HILL a/k/a "Kunta"** ("HILL").

2.      Based on the information set forth in this Affidavit, I submit there is probable cause to believe that from at least in or around June 2022 to at least on or about February 1, 2023, in the Eastern District of Virginia, **HILL** knowingly and intentionally combined, conspired, confederated, and agreed with others, both known and unknown, to distribute four hundred (400) grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1).

### AGENT BACKGROUND

3.      I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United Sates Code, Section 2516. I have been a Special Agent with the DEA since

March 2021. I am currently assigned to the DEA High Intensity Drug Trafficking Area (HIDTA) Task Force located in Reston, Virginia. During my time in law enforcement, I have participated in the application for search warrants and have participated in the execution of numerous arrest and search warrants in the investigation of narcotics and organized crime related offenses, resulting in the prosecution and conviction of numerous individuals and the seizure of illegal drugs, weapons, stolen property, and other evidence of criminal activity.

4.      I graduated from the DEA Academy on July 16, 2021. The extensive training I completed at the DEA Academy consisted of various courses such as: Interview and Interrogation, Drug Identification, Confidential Source Management, Legal Procedures and law regarding Title 21, Report Writing, Evidence Handling, Surveillance, Raids, Combat Shooting, Defensive Tactics, and Physical Fitness. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology used by drug traffickers and abusers of controlled dangerous substances.

5.      Based on this training and experience, I have become knowledgeable about the methods and modes of narcotics operations, and the language and patterns of drug use and drug trafficking. Throughout my participation in investigations of narcotics trafficking organizations, I have testified in grand jury proceedings. I have gained knowledge in the use of various investigative techniques including the use of physical surveillance, undercover agents, confidential informants, the controlled purchase of illegal narcotics, electronic surveillance, consensually monitored recordings, investigative interviews, financial investigations, the service of administrative and grand jury subpoenas, and the execution of search and arrest warrants.

6.      This Affidavit does not contain every fact known to me or the government regarding this investigation, but rather contains only information necessary to demonstrate probable cause in support of the requested search warrants.

7.      Law enforcement officers utilized two Confidential Sources, herein, "CS-1" and "CS-2," during the investigation. For this affidavit, these individuals will be referred to in the masculine gender regardless of their true gender. During the time that CS-1 and CS-2 have cooperated with law enforcement, they have provided information which has proven to be truthful, reliable, and to the extent possible has been corroborated through various investigative techniques and independent investigations. To my knowledge, none of the information provided to me or any other members of law enforcement by CS-1 or CS-2 has proved to be false, misleading, or inaccurate in any material respect.

8.      I base the facts set forth in this affidavit upon my personal knowledge, information obtained during my participation in this investigation, knowledge obtained from other individuals including law enforcement personnel, and communications with others who have personal knowledge of the events and circumstances described herein.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

**PROBABLE CAUSE**

*Introduction*

9.      Beginning in or around June 2022, federal and state investigators began investigating the drug trafficking activities of **HILL** and other co-conspirators, including co-conspirator 1 (hereinafter, "CC-1"). As set forth more fully below, this investigation led to a series of controlled purchases of fentanyl pills from CC-1CC-1 who was supplied by **HILL**. **HILL** is a

convicted felon and a narcotics distributor operating in Northern Virginia. A February 2023 search warrant executed on an apartment where **HILL** was staying and stashing narcotics recovered a firearm kept in **HILL's** room near illegal narcotics.

### *July 2022 Citizens Report*

10.     On or about July 19, 2022, an e-mail address maintained by the Prince William County, Virginia, Police Department received an e-mail from "Dquinta Hill." The e-mail provided several pictures of alleged gang members, including **HILL**. An additional e-mail from the same address advised that, "D'Quinta Hill is in the pictures. Also, sells drugs and has a lot of firearms." The e-mail provided various addresses associated with **HILL**, including an apartment at 7605 Wildwood Court, Apartment A2, in "fairfax VA." The e-mail stated that **HILL** "also makes threats to shoot cars and houses up."

### *November 2022 Controlled Purchase of 500 Fentanyl Pills*

11.     On or about November 1, 2022, a law enforcement source ("CS-1")[1] contacted CC-1 by telephone and arranged to purchase approximately five hundred (500) fentanyl pills from CC-1. CC-1 was using a telephone number ending in -0975 ("CC-1 TELEPHONE 1"). CS-1 stated that CS-1 was arranging the transaction on behalf of another individual who was in fact an undercover agent ("UC-1"). CC-1 advised CS-1 that he (CC-1) had to go to his "cousins" first because CC-1 did not have enough pills to provide CS-2 with all 500 pills. CC-1 then requested UC-1's phone number, which CS-2 provided. Shortly thereafter, CC-1 called UC-1 and negotiated the sale of approximately 500 fentanyl pills for approximately two thousand eight hundred dollars ($2,800). CC-1 directed UC-1 to meet him near Wildwood Court in Lorton, Virginia.

---

[1] The information provided by CS-1 was reliable and corroborated by independent evidence, including video recordings, law enforcement surveillance, and electronic evidence. Based on the foregoing, I submit CS-1 is reliable.

12.      Another undercover agent ("UC-2") then traveled to the Wildwood Court area to meet with CC-1. When UC-2 arrived at that area, UC-1 contacted CC-1. Agents conducting surveillance in the area observed CC-1 exit an apartment on Wildwood Court (the "WILDWOOD COURT APARTMENT"). CC-1 then entered the front passenger seat of UC-2's vehicle and conducted the transaction while talking on the phone with UC-1. During this conversation, CC-1 stated that he could provide up to a "k pack" in the future. In my training and experience, I know that a "k pack" is a term used to refer to a package of 1,000 fentanyl pills. The drug transaction with CC-1 was video recorded.

13.      Laboratory analysis of the pills sold by CC-1 confirmed that the pills contained approximately 53.79 grams of fentanyl.

14.      Phone toll analysis of CC-1 TELEPHONE 1 revealed that on or about November 1, 2022, and in and around the time of the transaction, there were numerous phone calls between CC-1 TELEPHONE 1 and the phone number ending in -9367. To determine the user of the phone number ending in -9367, law enforcement reviewed tolls and analyzed the top contacts for that phone number. Those contacts were numbers known to be in frequent contact with **HILL** through another known telephone number for **HILL**. Based on my training and experience knowing that **HILL** and many narcotics dealers use several telephone numbers, law enforcement concluded that the -9367 number was being used by **HILL** (hereinafter, "HILL TELEPHONE 1").

15.      Based on training and experience and knowledge of this investigation, law enforcement identified a pattern of calls between CC-1 TELEPHONE 1 and HILL TELEPHONE 1. These call patterns are consistent with drug distributors contacting the source of supply to sell to customer.

*December 2022 Controlled Purchase of 1,000 Fentanyl Pills*

16.     On or about December 20, 2022, UC-1 contacted CC-1 on CC-1 TELEPHONE 1 and negotiated the purchase of approximately one thousand (1,000) fentanyl pills from CC-1. UC-1 stated that UC-2 would again meet CC-1 for the transaction.

17.     Later that same day, UC-2 again traveled to the Wildwood Court area in Lorton to meet with CC-1. UC-1 contacted CC-1 on CC-1 TELEPHONE 1 and advised that UC-2 had arrived in the meeting area.

18.     A short time later, law enforcement surveillance observed CC-1 walking around a parking lot area around Wildwood Court and Ashland Woods Lane. CC-1 appeared to be conducting counter surveillance by looking into several parked vehicles before approaching UC-2's vehicle.

19.     CC-1 then opened the front passenger door of UC-2's vehicle and placed a plastic baggie containing approximately 1,000 fentanyl pills onto the front passenger seat. UC-2 then placed approximately five thousand five hundred fifty dollars ($5,550) in law enforcement funds on the passenger seat, which CC-1 took before closing the door and walking away. The transaction was video recorded.

20.     The pills sold by CC-1 to UC-2 on December 20, 2022, were submitted to DEA's Mid-Atlantic Laboratory for testing, which found the pills to contain fentanyl and have a net weight of approximately 110.22 grams.

*January 2023 Controlled Purchase of 1,000 Fentanyl Pills*

21.     On or about January 10, 2023, UC-1 contacted CC-1 on CC-1 TELEPHONE 2 and arranged to purchase approximately one thousand (1,000) additional fentanyl pills from CC-1. CC-1 again directed UC-1 to have UC-2 meet CC-1 near WILDWOOD COURT APARTMENT.

22.     Later that day, UC-2 traveled to the Wildwood Court area to meet with CC-1. Upon arriving, UC-2 contacted CC-1 on CC-1 TELEPHONE 2. Law enforcement surveillance then observed CC-1 walk to the driver's side of UC-2's vehicle. After a brief conversation, CC-1 opened the front passenger door of UC-2's vehicle. CC-1 then handed UC-2 a plastic baggie containing approximately 1,000 fentanyl pills in exchange for approximately five thousand five hundred dollars ($5,500) in law enforcement funds.

23.     During the transaction, CC-1 stated that the next time UC-2 wanted to purchase pills, CC-1 would arrange for his source of supply to conduct the transaction with UC-2 at the same Wildwood Court location. The transaction with CC-1 was video recorded.

24.     Laboratory analysis of the pills sold by CC-1 to UC-2 revealed that the pills contained approximately 109.53 grams of fentanyl.

25.     Phone toll analysis of CC-1 TELEPHONE 1 reflected that on or about January 10, 2023, there were numerous phone calls between CC-1 TELEPHONE 1 and UC-1 and, immediately after CC-1 ended phone calls with UC-1, CC-1 TELEPHONE 1 contacted HILL TELEPHONE 1.

*Electronic Surveillance of the WILDWOOD COURT A2 APARTMENT*

26.     After law enforcement identified HILL's residence, Apartment A2 at the WILDWOOD COURT APARTMENT, state officers placed electronic surveillance facing the door of the apartment. The electronic surveillance captured HILL entering and exiting the

apartment numerous times in December and January 2023. Still photographs of HILL captured

from that camera are shown below:

  

*February 2023 Controlled Purchase of 2,000 Fentanyl Pills & Arrest of CC-1*

27.    On or about February 1, 2023, UC-1 contacted CC-1 on CC-1 TELEPHONE 1 and

negotiated the purchase of approximately two thousand (2,000) fentanyl pills from CC-1. CC-1

again directed UC-1 to have the pills picked up near the WILDWOOD COURT APARTMENT.

28.    UC-1 then traveled to Wildwood Court to meet with CC-1. Law enforcement

surveillance then observed CC-1 exit an apartment building and meet with UC-1 in UC-1's

vehicle.

29.    During the transaction, CC-1 gave UC-1 a plastic baggie containing approximately

2,000 fentanyl pills in exchange for approximately nine thousand dollars ($9,000) in law

enforcement funds. CC-1 also stated that he wanted to introduce UC-1 to his "man" so that UC-

1 could get a better price for future fentanyl pill purchases. CC-1 invited UC-1 to a nightclub to "break bread" and meet his source of supply. This transaction with CC-1 was also video recorded.

30.     The approximately 1,780 pills sold by CC-1 were blue in color and stamped with "M30" on one side. In my training and experience, I know that these pills are visually consistent with counterfeit fentanyl pills. The pills were submitted for laboratory analysis which confirmed that a sample of the pills purchased from CC-1 contained fentanyl. A request for laboratory analysis of the remainder of the pills revealed the pills sold to UC-1 by CC-1 on February 1, 2023 weighed approximately 189.1 grams. Based on these results the analysis also revealed there is a 95 percent (95%) level of confidence that at least 90 percent (90 %) of pills sold to UC-1 by CC-1 contain fentanyl.

*Events of February 2023*

31.     After the purchase of suspected fentanyl pills from CC-1, investigators learned that the WILDWOOD COURT APARTMENT was being rented by **HILL**. Electronic surveillance of the WILDWOOD COURT APARTMENT observed **HILL** entering and exiting the throughout December 2022 and January 2023.

32.     Investigators then executed a state search warrant on **HILL's** WILDWOOD COURT APARTMENT on or about February 1, 2023, the same day as the purchase of fentanyl pills from CC-1, after observing CC-1 entering and/or leaving from there prior to some of the controlled purchases.

33.     The search of the apartment located, among other things, two firearms (a FN Five-Seven MK2, 5.7x28mm caliber semi-automatic pistol bearing serial number 386425628, and a H&K P2000 .40 Caliber pistol bearing serial number 122-010777), approximately fifty-five (55) fentanyl pills, cocaine, electronic devices, and U.S. currency. By comparing law enforcement

records of the serial numbers of the U.S. currency found inside **HILL's** residence, investigators discovered that serial numbers on the U.S. currency matched those on the law enforcement funds provided by UC-2 to CC-1 for the purchase of 2,000 fentanyl pills on or about February 1, 2023. The firearms, narcotics, and currency were found inside a room inside the residence in which officers also located a laptop displaying **HILL's** name as the login username and mail addressed to **HILL**.

34.     During the search of **HILL's** apartment, law enforcement also identified **HILL's** bedroom within the apartment. **HILL's** bedroom contained the narcotics and firearms seized above. There was also a MacBook in **HILL's** bedroom with the lock screen displaying **HILL's** name as the login username. The photographs below were captured during the execution of the search warrant of Apartment A2 on February 1, 2023.

Funds provided by UC-1 to CD-1 (earlier that day)



HILL's MacBook lock screen



FN Pistol seized from HILL' bedroom



Mail addressed to HILL



35.     Laboratory analysis of the pills discovered inside the WILDWOOD APARTMENT confirmed that they contained fentanyl. Analysis of the suspected cocaine confirmed that it contained cocaine.

36.     After the discovery of the illegal narcotics in **HILL's** residence, state law enforcement obtained a state arrest warrant for **HILL** but were unable to locate **HILL**. Thereafter, on or about February 10, 2023, law enforcement officers in Georgia encountered **HILL** driving a vehicle and attempted a traffic stop. **HILL** fled from the officers on a high-speed vehicle chase before crashing his vehicle into a church and successfully fleeing on foot.

37.     A search of the crashed vehicle that **HILL** had been driving revealed one (1) Taurus International, 9mm pistol, bearing serial number ACG014170.

<CONTINUED ON NEXT PAGE>

## CONCLUSION

38.     Based on the foregoing, I submit that probable cause exists to believe that from at least on or about June 2022, to on or about February 1, 2023, in the Eastern District of Virginia, **HILL** unlawfully, knowingly, and intentionally combined, conspired, confederated, or agreed with Gordon CC-1 and others, known and unknown, to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

*Vanessa Drew*

Vanessa Drew
DEA Special Agent

Subscribed and sworn to by telephone in accordance with Fed. R. Crim. Proc. 4.1 on May 27, 2025.

Digitally signed by Ivan Davis
Date: 2025.05.27 12:43:19
-04'00'

The Honorable Ivan D. Davis
United States Magistrate Judge